UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:

DESERT HIGHLANDS, LLC.,
    Debtor.                                 No. 11-09-11931 SA

**FINDINGS OF FACT AND CONCLUSIONS
OF LAW ON WEINRITTER REALTY LP'S
<u>MOTION FOR RELIEF FROM AUTOMATIC STAY</u>**

This matter came before the Court for hearing on Weinritter Realty LP's ("Weinritter") Motion for Relief from Automatic Stay (doc 17), Debtor's Objection (doc 22) and Weinritter's Reply (doc 30). Weinritter is represented by its attorneys Moses, Dunn, Farmer & Tuthill, P.C. (Victor E. Carlin). Debtor is represented by its attorneys Moore, Berkson & Gandarilla, P.C. (George M. Moore). This is a core proceeding. 28 U.S.C. § 157(b)(2)(G). For the reasons set forth below, the Court finds that the Motion for Relief is well taken and should be granted.

<u>**FACTS**</u>

The Debtor admitted the following facts in response to the stay motion.

1. WeinRitter Realty, LP is a Texas limited partnership.

2. For consideration received, on June 16, 2008 Desert Highlands LLC, a New Mexico limited liability company (hereinafter, "Desert Highlands" and/or the "Debtor") executed and delivered to WeinRitter a Promissory Note in the sum of $850,000.00 (the "Note").

3. As security for the obligations of the Debtor under the Note, on June 16, 2008 the Debtor executed and delivered to WeinRitter a Deed of Trust on 20.201 acres of real property (hereinafter, the "Property") located at 753 Union Chapel Road, Cedar Creek, Bastrop County, Texas.

4. The Property is more particularly described as follows:

> 20.201 Acres of Land out of the John Litton Survey, Abstract No. 228 in Bastrop County, Texas, comprised of Tract No. 2, J.V. Ash Subdivision, according to the Map or Plat Records of Bastrop County, same being that Tract conveyed as 20.201 acres to Desert Highlands, LLC by Deed recorded in volume 1536, page 331, official Records of Bastrop County, and more particularly described by metes and bounds on the Survey prepared by C. Richard Ralph, RPLS No. 4758 on June 10, 2008; together with all structures and improvements thereon.

5. $654,325.70 of the subject $850,000.00 loan was used to pay off the prior secured financing held by the seller of the Property to the Debtor, the Oaks RV Park LLC. $42,500 was used to pay the loan origination fee of Trimac Financial Corp., and $26,296.28 was used to pay the 2007 County and School Taxes on the Property.

6. Pursuant to the Note, the Debtor agreed to make monthly payments of interest only at the rate of 13.5% per annum, with said payments being due on the first day of each month beginning August 1, 2008, and continuing monthly thereafter until July 1, 2010, when the entire principal and accrued interest then remaining unpaid would be due and payable.

7. Pursuant to the Deed of Trust, the Debtor agreed to pay all taxes and assessments on the Property when due. However, the 2008 County and School Taxes on the Property in the amount of $22,549.02 are past due, and unpaid.

8. As a result of the Debtor's default on the Note, on March 26, 2009 Weinritter caused a Notice Of Default, Demand For Payment, And Intent To Accelerate to be sent to the Debtor.

9. On April 13, 2009 the Substitute Trustee under the Deed Of Trust sent the Debtor a Notice Of Substitute Trustee's Sale, including notice that the entire principal balance with interest had been declared due and payable.

10. On April 13, 2009, in accordance with the Note, the interest rate on the accelerated indebtedness increased to 18% per annum.

11. The Substitute Trustee's Sale was to have taken place on May 5, 2009. However, the Debtor filed bankruptcy on May 4, 2009.

12. Prior to the Debtor's purchase of the Property in 2005 it had been operated as an RV park for a time. In 2006 Debtor attempted to operate the Property as an RV park for approximately eight months. However, the operation was not cost-effective, and the Debtor shut it down.

13. The Property has been essentially vacant and without any ongoing operation since 2006. The Property does not generate any income for the Debtor.

14. The Camp Swift Ranch is not related to the Property directly or indirectly.

The Court also heard the testimony of two expert real estate appraisers and a principal of both the Debtor and Weinritter. The Court makes the following additional findings.

15. The debt secured by the subject property was $944,975.57 as of August 18, 2009. Interest is accruing on the debt at the rate of 18%, or $441.26 per diem. Late fees and attorney fees continue to accrue.

16. The Court found both experts credible and very knowledgeable of the area.

17. Weinritter's expert Jose S. Puente testified that the value of the property was $690,000 "as is."

18. Debtor's expert David Heaps testified that the value of the property was $1.075 million "as is." He earlier valued the property at $1.345 million "as is" but $1.445 if it were subdivided. He had based these values on the mistaken assumption that sewer services were available.

19. There was conflicting evidence on the availability and cost of installing sewer services to the property. Robert Janes, Debtor's principal, testified on cross examination that the LCRA (Lower Colorado River Authority) had a contract with Debtor to install sewer hook ups, but that due to the high cost of $622,000 the Debtor terminated the contract. Mr. Puente testified that

Page -4-

Case 09-11931-s11    Doc 44    Filed 10/22/09    Entered 10/22/09 09:14:02 Page 4 of 6

the cost of connecting to a sewer would be $800,000 to $900,000. Mr. Heaps testified that he did not think that sewer service could be installed for less than $622,000.

20. The Court has considered the parties' arguments about the propriety/impropriety of the comprable properties used by the two experts, and finds that each used reasonable properties and each defended their choices logically.

21. The Court finds that for the purpose of this stay motion the value of the subject property is between $690,000 and $725,000. The $690,000 lower figure is Weinritter's. The $725,000 is computed as follows: Debtor's original appraisal amount was $1.345 million. This was adjusted to $1.075 when the expert realized there was no sewer in place, which was a reduction of $270,000. The Court finds that the sewer would cost at least $620,000, so a further reduction of $350,000 is called for. Reducing the $1.075 million by $350,000 yields $725,000.

22. The property is non-income producing.

23. The property is not necessary for an effective reorganization.

24. There is no equity in the property.

## **CONCLUSIONS OF LAW**

The automatic stay should be terminated because there is no equity in the property and it is not necessary for an effective

Case 09-11931-s11    Doc 44    Filed 10/22/09    Entered 10/22/09 09:14:02 Page 5 of 6

reorganization.  The Court will enter an Order terminating the automatic stay.

                                  _____
                                  Honorable James S. Starzynski
                                  United States Bankruptcy Judge

Date Entered on Docket:  October 22, 2009

Copies to:

George M Moore
Moore, Berkson & Gandarilla, P.C.
PO Box 7459
Albuquerque, NM 87194

Leonard K Martinez-Metzgar
Office of UST
PO Box 608
Albuquerque, NM 87103-0608

Victor E Carlin
Moses Law Firm
PO Box 27047
612 First Street, NW
Albuquerque, NM 87125-7047

Case 09-11931-s11    Doc 44    Filed 10/22/09    Entered 10/22/09 09:14:02 Page 6 of 6